[Civ. No. 18992.   First Dist., Div. One.   Feb. 16, 1960.]

SUBSEQUENT INJURIES FUND, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and CHARLES A. FERGUSON, Respondents.

Stanley Mosk, Attorney General, Gerald F. Carreras and B. Franklin Walker, Deputy Attorneys General, for Petitioner.

David A. Dolgin, Condon, Dolgin & Page, Everett A. Corten, Emily B. Johnson, and Hanna & Brophy for Respondents.

BRAY, P. J.—Petitioner seeks review and annulment of an award of the Industrial Accident Commission of compensation benefits from the Subsequent Injuries Fund to the injured employee, Charles Ferguson.

### QUESTION PRESENTED

Where the employer has furnished medical treatment to an employee after five years from the employee's subsequent injury, does the limitation in section 5410, Labor Code, or that in section 5405, subdivision (c), apply to an application for benefits from the Subsequent Injuries Fund?

### RECORD

Ferguson sustained an industrial injury to his back on May 7, 1951. Prior thereto, he had a preexisting permanent disability. The medical reports show that prior to and from May 7, 1956 (five years from the date of the injury), until June 5, 1958 (date last seen by the employer's insurance carrier's doctor), Ferguson was seen, examined, prescribed for and treated by the carrier's orthopedists approximately 20 times at approximate monthly intervals. After the expiration of five years from the subsequent injury, a payment of temporary disability covering the period through May 17, 1953, was

made by the carrier to the employee. June 20, 1958, Ferguson filed an application for an award of benefits from the Subsequent Injuries Fund. This date is more than five years after the date of the injury but within one year of the last furnishing of medical treatment and compensation benefits. The fund answered claiming that the application was barred by section 5410, Labor Code. The commission found that the industrial injury of May 7, 1951, caused Ferguson a permanent disability of 74½ per cent, which, combined with the preexisting permanent disability, resulted in a total permanent disability of 83 per cent. It then made an award to Ferguson payable out of the fund, pursuant to the provisions of section 4751.

SECTION 5405, SUBDIVISION (c) APPLIES BY IMPLICATION

▮▮▮ Ferguson and the commission contend that section 5405, subdivision (c), applies, while the fund contends that the proper section is 5410.

Section 5410 provides: "Nothing in this chapter shall bar the right of any injured employee to institute proceedings for the collection of compensation within five years after the date of the injury upon the ground that the original injury has caused new and further disability. The jurisdiction of the commission in such cases shall be a continuing jurisdiction at all times within such period. This section does not extend the limitation provided in Section 5407."[*]

Section 5405 provides: "The period within which may be commenced proceedings for the collection of the benefits provided by Articles 2 or 3, or both, of Chapter 2 of Part 2 of this division is one year from:

"(a) The date of injury; or

"(b) The expiration of any period covered by payment under Article 3 of Chapter 2 of Part 2 of this division; or

"(c) The date of last furnishing of any benefits provided for in Article 2 of Chapter 2 of Part 2 of this division."

Section 5405 refers to proceedings brought to collect the benefits provided by articles 2 or 3, or both, of chapter 2 of part 2 of division IV of the Labor Code. Article 2 deals with medical and hospital treatment to be provided by the employer. Article 3 deals with disability payments to be paid by the employer, and does not include payment for subsequent injuries, whether by the employer or from the fund. The provisions for payment from the fund are contained in article 5.

---

[*] Section 5407 refers to proceedings for compensation for misconduct of the employer. It has no application here.

As the proceeding before the commission was not to collect any benefit provided by articles 2 or 3, the limitations provided in section 5405 do not by their language appear to apply.

An examination of the Labor Code discloses that there is no section which by its very terms provides any limitation to the time for proceedings against the fund under section 4751. From this fact, prior to the decisions hereafter mentioned, it might have been concluded either that the Legislature intended (1) that there be no limitations to such proceedings; (2) that the limitation be that in section 338, subdivision (1), Code of Civil Procedure, as contended unsuccessfully in *Subsequent etc. Fund* v. *Industrial Acc. Com.* (Patterson) (1952), 39 Cal. 2d 83, 90 [244 P.2d 889], hereafter discussed, or (3) that the limitations be geared to the limitations provided in the Labor Code for proceedings for compensation against the employer. This latter is the better interpretation and the one which the cases dealing with proceedings against the fund have adopted. Thus in the Patterson case, *supra, State* v. *Industrial Acc. Com.* (Clubb) (1957), 155 Cal.App.2d 288 [318 P.2d 34], and *Subsequent Injuries Fund* v. *Industrial Acc. Com.* (Pranzitelli) (1957), 151 Cal.App.2d 606 [312 P.2d 78], it was held that for proceedings against the fund the statute of limitations is the five-year period set forth in section 5410, on the theory that the application for benefits from the fund constituted in the words of section 5410 ''a new and further disability'' as regards any award made on an application against the employer for normal compensation. (See *Broadway-Locust Co.* v. *Industrial Acc. Com.* (1949), 92 Cal.App.2d 287, 290 [206 P.2d 856].) In all these cases the proceedings against the fund were brought in situations where there had been a proceeding for normal compensation against the employer. In the Patterson case, *supra,* the court in holding that the limitation set forth in section 5410 applied to the proceeding there, used this significant language: ''The operation of section 5410 is, of course, dependent upon the commencement of a proceeding to collect normal compensation within the time limits prescribed in chapter 2 of part 4 of division IV of the Labor Code [the chapter in which section 5405 is found].'' The reason that section 5410 has been held applicable to proceedings for benefits from the fund where there has been an award for normal compensation against the employer is ''that where an award for temporary disability has been made or compensation voluntarily paid, permanent disability resulting from the injury

is a new and further disability within the meaning of section 5410 . . .'' (*Broadway-Locust Co.* v. *Industrial Acc. Com.,* *supra,* 92 Cal.App.2d 287, 290.)* But where, as here, neither of these things has occurred, and a proceeding is brought for the first time to have disability determined, such disability is not ''a new and further disability'' resulting from the injury. It is *the* disability resulting from the injury. As 5410 only applies to new and further disability proceedings it cannot apply to *the* disability proceeding. That is the reason that the court in the Patterson case, *supra,* stated, ''The operation of section 5410 is, of course, dependent upon the commencement of a *proceeding* to collect normal compensation . . .'' (P. 92; emphasis added.) In using this language the Supreme Court evidently felt that unless a timely proceeding for normal compensation had been filed against the employer, any benefit sought from the fund would not constitute ''a new and further disability,'' thereby evidencing an intention to gear the employee's right to a benefit from the fund to a proper proceeding against the employer, even though in effect the employer is not interested in what the employee receives from the fund, or the fund in what the employee receives from the employer. Here there was not in the five-year period from the employee's injury any proceeding against the employer to which to gear a proceeding against the fund. The employee's time in which to proceed against the employer was by the acts of the employer in providing medical benefits to the employee over a long period of time extended by the provisions of section 5405 to one year from the date of the last furnishing of medical treatment. It would be rather absurd to hold that although the employee's right to benefits from the fund is geared to his application for normal compensation benefits, and his time to apply for the latter is extended by reason of section 5405, subdivisions (b) and (c) to a period beyond the five years expressed in section 5410, and beyond the one-year limit expressed in section 5405, subdivision (a), yet his time to proceed against the fund is limited to the five years expressed in section 5410. Section 5405 by its terms does not relate to the benefits provided by section 4751, being expressly limited to another portion of the code which deals exclusively with proceedings for medical treatment and benefits from the employer. However, in view of the necessity of relating disability

---

*While compensation was voluntarily paid in our case, it was not paid until after five years from the date of injury.

claims against the employer with claims against the fund, it necessarily follows that the Legislature intended that where section 5410 does not apply because no application against the employer has been made within the time therein specified, the employee's time to file against the fund is commensurate with his time to file against the employer. Thus, just as section 5410 does not expressly refer to proceedings against the fund but has been held to apply to those proceedings under certain circumstances, so here, although section 5405 does not expressly refer to proceedings against the fund, it necessarily must be held that the latter section must apply to proceedings against the fund under circumstances where the time of limitation of proceedings to which it is geared is extended. As said in the Patterson case, *supra,* "The question whether there will be aggravated permanent disability entitling an applicant to relief from the Subsequent Injuries Fund, like the question whether there will be any permanent disability, is one to which the answer may not appear until months after the injury." (P. 91.) Particularly is this so where, as here, medical treatment continues for more than five years. Such treatment may result in the reduction of the employee's total disability below the 70 per cent required to entitle him to benefits from the fund. Possibly a somewhat anomalous situation results from the fact that where the employee seeks normal compensation from his employer by a proceeding in the commission he has only five years from the date of the injury to file against the fund, even though his employer continues medical treatments beyond the five-year period, and the fact that if he does not thus within five years from the injury seek normal compensation from his employer, who is continuing medical treatment for more than five years, he is not barred thereafter from proceeding against the fund, within one year from the termination of the medical treatment. There is a reason for the distinction. In the first situation the employee has invoked a determination by the commission of the question of his disability, and having done so there is no reason why he should not ask the commission to determine not only the extent of that disability but by whom it is to be compensated. Having done so in the five-year period the commission has unlimited time thereafter to determine those questions. In the second situation he is given the right to delay asking the commission to determine the extent of his disability until within one year after the cessation of medical treatment, and it follows that his

right to have the question of who is to compensate him for that disability must necessarily be delayed likewise.

"The policy of the law, enjoined by both statute and precedent, directs that workmen's compensation laws shall be liberally construed in favor of extending their benefits." (Patterson case, *supra*, p. 91; Lab. Code, § 3202.) Under the circumstances of this case, to hold that section 5410 bars the employee from seeking the benefits of the fund, would disregard that principle which is so well engrained in the workmen's compensation laws.

The attorney general complains that if a proceeding is not joined against the fund until long after the date of the last injury it would be a practical impossibility for the fund to acquire information as to the existence and extent of the prior and subsequent disability. This same contention was made by him in the Patterson case and well answered by the court which stated that "all provisions pertaining to periods of limitation, are peculiarly and primarily for the Legislature. If the attorney general is having difficulty in protecting the fund because of the circumstances appearing here such difficulty, however grave it may be, appears to be one which can be corrected only by the Legislature." (P. 92.) Likewise, if there is any anomaly between the two situations hereinbefore discussed, its solution is a matter for the Legislature.

*State* v. *Industrial Acc. Com., supra,* 155 Cal.App.2d 288, is not opposed to the view taken here. That case dealt with the same type of situation that occurred in the Patterson case, *supra,* namely, an application within the five-year period for normal compensation benefits from the employer and no application for benefits from the fund until after the expiration of that period. While there is some language in the case which might indicate that in a situation such as we have in this case section 5405 might not apply by implication, such a situation was not before the court and the court expressly stated, "We are leaving undecided the question whether the references to 'Article 2' and to 'Article 3' (which appear in § 5405) include a reference to article 5 and the Subsequent Injuries Fund." (P. 291.)

We hold that where medical treatment given an employee has continued and no application has been made for normal compensation so that an application for fund benefits could not constitute an application for "new and further disability" under section 5410 by implication, the limitations that

apply to a proceeding brought against the fund are those specified in section 5405.

The award is affirmed.

Tobriner, J., and Duniway, J., concurred.

Petitioner's application for a rehearing was denied March 2, 1960, and its application for a hearing by the Supreme Court was denied April 13, 1960.