[No. F023534. Fifth Dist. Dec. 7, 1995.]

VISALIA SCHOOL DISTRICT, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and LUPE
HERNANDEZ, Respondents.

COUNSEL

Hanna, Brophy, MacLean, McAleer & Jensen, and Daniel P. O'Brien for Petitioner.

No appearance for Respondent Worker's Compensation Appeals Board.

William A. Herreras for Respondent.

OPINION

ARDAIZ, P. J.—

### INTRODUCTION

The issue in this case is the meaning of the word "request" in Labor Code section 5405.5.[1] That section states: "Except as otherwise provided in Section 5410, the period within which an employee may request vocational rehabilitation benefits provided by Section 139.5 is one year from the date of the last finding of permanent disability by the appeals board, or one year from the date the appeals board approved a compromise and release of other issues."

Respondent/applicant Lupe Hernandez telephoned the claims administrator of petitioner/employer Visalia School District and requested vocational rehabilitation benefits. Respondent made this telephone call on February 22, 1994, which was within one year of the March 1, 1993, last finding of permanent disability by the Workers' Compensation Appeals Board (board). The board found that respondent's telephonic request to petitioner's administrator was a "request" for vocational rehabilitation benefits within the meaning of section 5405.5, and was therefore timely. Petitioner disagrees and contends that the phrase "the period within which an employee may request vocational rehabilitation benefits" means "the period within which an employee may initiate proceedings, pertaining to a dispute about eligibility for vocational rehabilitation benefits, before the board or before the rehabilitation unit of the Division of Workers' Compensation of the Department of Industrial Relations." Petitioner argues that the telephone call was not a "request" within the meaning of the statute, and that respondent therefore did not make a timely request for vocational rehabilitation benefits. As we shall explain, we agree with the board and will affirm the board's order denying petitioner's petition for reconsideration.

---

[1] All statutory references hereafter are to the Labor Code unless otherwise indicated.

## Facts and Procedural History

A detailed account of the factual and procedural scenario leading up to respondent's February 22, 1994, telephonic request for vocational rehabilitation benefits is not, strictly speaking, essential to our ensuing discussion of the meaning of section 5405.5. The truly essential facts have been set forth above in the Introduction. Nevertheless, because the workers' compensation bar might wish to see respondent's February 22, 1994, telephone call placed into context, so to speak, we provide here a slightly more detailed account of this case's factual and procedural history.

During the period September 11, 1983, through September 11, 1984, respondent was employed by petitioner as a janitor. Petitioner was permissibly self-insured for workers' compensation liability.

On October 28, 1987, respondent's attorney sent a letter to petitioner's claims administrator. That letter stated in part that:

"We are at this time filing or have in the recent past filed an application regarding the above-captioned matter.

"Based upon information received from the applicant and/or a review of medical reports together with our understanding of the applicant's job duties prior to the injury, it appears there may be a need for rehabilitation benefits herein.

"We would request at this time that you file all medical reports in your possession to clarify the rehabilitation issue.

"We also request that this case be referred to an appropriate rehabilitation vendor, so that necessary interviews and job analysis to determine Qualified Injured Worker status may be performed.

"Notice is hereby given that a reasonable attorney's fee will be required upon order of the Board.

"In the event a feasibility study is not performed within 30 days from receipt of this letter, applicant will take the initiative and utilize an independent vendor or the State Department of Rehabilitation for this study."

On October 30, 1987, respondent filed an application for adjudication of claim with the Santa Barbara office of the board. He alleged in that application that he had sustained a cumulative injury to his psyche arising out of

and occurring in the course of his employment by petitioner as a janitor during the period September 11, 1983, through September 11, 1984.

Respondent stated in paragraph 9 of his application that: "This Application is filed because of a disagreement regarding liability for: . . . Rehabilitation."

On November 25, 1987, petitioner filed an answer to respondent's application and denied respondent's allegation that he was in need of vocational rehabilitation. Petitioner specifically noted in its answer that the rehabilitation issue had been "Raised by Application."

On May 1, 1989, following medical discovery by the parties, petitioner filed a declaration of readiness to proceed requesting a trial hearing. Petitioner listed rehabilitation as one of the issues that it wished to address at that hearing.

On June 13, 1989, the parties attended a trial hearing and stipulated that the correct dates of alleged injury were September 11, 1983, through September 11, 1984. Respondent's claim then proceeded to trial on the issues of statute of limitations, whether the injury arose out of the employment and was sustained in the course of the employment (injury AOE/COE), temporary disability, permanent disability, apportionment, self-procured medical treatment, medical-legal costs, further medical treatment, and attorney fees. The issue of vocational rehabilitation was not raised as an issue.

On October 26, 1989, following the submission of written argument, workers' compensation judge Bruce Lang issued his findings and award and orders. He found in favor of the respondent on the issues of statute of limitations, injury AOE/COE, temporary disability, further medical treatment, self-procured medical treatment, and medical-legal expenses. He deferred the issues of permanent disability and apportionment pending further development of the record.

On November 20, 1989, petitioner filed a petition for reconsideration challenging Judge Lang's findings on the threshold issues of statute of limitations and injury AOE/COE.

On January 19, 1990, the board granted reconsideration to further study the issues. On April 19, 1990, the board denied the petition and affirmed Judge Lang's October 26, 1989, findings and award and orders.

On August 15, 1991, respondent and petitioner filed stipulations with request for award. Those stipulations basically affirmed the findings that had been made by Judge Lang.

The parties also agreed in the stipulations that respondent had been temporarily totally disabled from September 11, 1984, through July 19, 1989, and from January 24, 1991, onwards pending receipt of a report from James Wells, M. D., whom the parties had selected as an agreed medical examiner in the field of psychiatry. The parties deferred the issues of permanent disability and further medical treatment pending receipt of Dr. Wells's report. The stipulations did not address the issue of vocational rehabilitation.

On April 3, 1992, respondent was examined by Dr. Wells. In his report dated April 11, 1992, Dr. Wells stated that respondent's psychiatric condition was permanent and stationary, and that there was a need for further medical treatment by Jerome Schulte, M. D., who was respondent's treating doctor. Dr. Wells also stated: "Mr. Hernandez does not meet the criteria of being a Qualified Injured Worker under DIA guidelines. It would be best if he could be channeled into some activity which would employ his skills and training rather than to start from a zero base. If employment in the maintenance and janitorial field in an appropriate setting could be found, this would be ideal. As part of such process, probably some behavioral therapy [could] be a significant part of the rehabilitation."

On May 4, 1992, petitioner sent a letter to respondent stating that petitioner had received Dr. Wells's April 11, 1992, report. Petitioner also stated in this letter that it was commencing permanent disability advances and would not be providing vocational rehabilitation benefits because Dr. Wells had found that respondent was permanent and stationary, and was not a qualified injured worker. Respondent did not object to this letter and petitioner did not seek to have its decision ratified by the rehabilitation unit.

On July 7, 1992, following further medical discovery, a further hearing was held on respondent's claim. The parties raised the issues of temporary disability from July 20, 1989, to January 23, 1991, permanent disability, apportionment, attorney fees, and various claims for credit. The issue of vocational rehabilitation was not raised.

Following further reporting by the agreed medical examiner and further proceedings, respondent's claim was submitted for decision. On March 1, 1993, Workers' Compensation Judge James M. Bass issued his supplemental findings and award and orders.

In his supplemental findings and award and orders, the workers' compensation judge found, in relevant part, that respondent's claim for additional temporary disability for the period July 20, 1989, through January 23, 1991, was barred by the statute of limitations because the issue of temporary disability had been previously addressed at the first trial and in the stipulations that were submitted by the parties on August 15, 1991, and respondent had not raised the issue of additional temporary disability until more than five years after the date of his injury. The workers' compensation judge also found that respondent's psychiatric injury had caused 27.5 percent permanent disability.

On February 22, 1994, respondent informed petitioner's claims administrator by telephone that he was able to participate in vocational rehabilitation services and that he was interested in receiving those services.

On February 22, 1994, petitioner's claims administrator sent a denial of vocational rehabilitation services (form DWCRU-500-Y) to respondent. It stated: "Dr. Wells, the Agreed Medical Evaluator, indicates you do not meet the criteria of being a Qualified Injured Worker.

"There is no medical which indicates you are able to participate in rehab. and it is past five years from the date of your injury."

On February 24, 1994, respondent's treating doctor wrote a report stating that the respondent's psychiatric condition had stabilized sufficiently to allow his participation in vocational rehabilitation.

On or about March 14, 1994, respondent filed with the rehabilitation unit a written "Request for Dispute Resolution" (form DWCRU-103 (12/90)) requesting a determination of whether respondent was entitled to vocational rehabilitation benefits.

On April 12, 1994, the rehabilitation unit held a hearing on the respondent's claim. On April 14, 1994, the rehabilitation consultant issued his decision and order. The consultant found, in relevant part, that:

"1. The applicant's request for vocational rehabilitation services is not barred by the statute of limitations.

"2. The Agreed Medical Examination and Report of James Wells, M. D. dated 4/11/94 is not adequate for a substantive disposition on the employee's status as a QIW[c][1]."

On April 29, 1994, petitioner timely appealed the April 14, 1994, decision and order. On July 7, 1994, a hearing was held on petitioner's appeal.

Following the submission of written argument by the respondent and petitioner, petitioner's rehabilitation appeal was submitted for decision. On December 14, 1994, the workers' compensation judge issued his findings and order. He found that:

"1. The Applicant's claim for vocational rehabilitation is not barred by the statute of limitations. The Rehabilitation Unit and the Workers' Compensation Appeals Board have jurisdiction to hear the issues in the Applicant's vocational rehabilitation claim.

"2. The Rehabilitation Unit properly found in its 4/14/94 Decision and Order that the 4/11/92 Agreed Medical Examination Report of James Wells, M. D. was not adequate for a substantive disposition of the employee's QIW status."

On January 1, 1995, petitioner filed its petition for reconsideration. On January 6, 1995, respondent filed his answer to the petition.

On January 18, 1995, the workers' compensation judge requested a brief extension of time from the board to address the petition. The ground for this request was that the judge had been absent from his office for several days due to illness. The board extended the deadline for the judge's report and recommendation to January 24, 1995.

On January 24, 1995, the workers' compensation judge issued an order rescinding findings and orders. The judge explained in that order that he had been unaware of the case of *Roberts* v. *Workers' Comp. Appeals Bd.* (1992) 3 Cal.App.4th 631 [4 Cal.Rptr.2d 576] when he issued his findings and award, that the *Roberts* case appeared to be relevant to the issues of statute of limitations and jurisdiction, and that the *Roberts* case was not discussed in the petitioner's petition for reconsideration or in respondent's answer. The workers' compensation judge stated in that order that he was scheduling a further hearing on respondent's claims to allow the parties the opportunity to present further arguments on the issues of statute of limitations and jurisdiction in light of the *Roberts* case.

On January 31, 1995, the appeals board informed by workers' compensation judge by telephone that its extension of time for the filing of his report and recommendation did not extend the time for amending, modifying, or rescinding awards, orders, etc. under board rule 10859 (Cal. Code Regs., tit. 8, § 10859). The board instructed the workers' compensation judge to cancel the hearing set for February 23, 1995, and to file his report and recommendation.

On February 2, 1995, the workers' compensation judge (WCJ) issued his report and recommendation. Relying on *Roberts, supra,* the WCJ opined that respondent's February 22, 1994, telephone request to petitioner's claims administrator was a "request" for vocational rehabilitation benefits within the meaning of section 5405.5, and that respondent's claim for vocational rehabilitation benefits was therefore not barred. The WCJ also opined that Dr. Wells's April 11, 1992, report was not adequate for a substantive disposition of the issue of respondent's entitlement to vocational rehabilitation benefits. He recommended that the board remand the case to the WCJ for a further hearing on whether respondent qualified for vocational rehabilitation benefits.

On March 3, 1995, the board denied the petitioner's petition for reconsideration. The board's order denying reconsideration expressly incorporated the reasoning of the WCJ's report.

Petitioner then petitioned this court for a writ of review. We granted review.

### DISCUSSION

In 1965 the Legislature enacted section 139.5 and thereby authorized the administrative director of the Division of Industrial Accidents to establish a rehabilitation unit within the division. (Stats. 1965, ch. 1513, § 44.5, p. 3565.) Under this original statute, an employer's initiating of a rehabilitation program for injured employees was voluntary, not mandatory. In 1974 the Legislature amended the statute to require employers to offer rehabilitation programs for certain injured employees. (Stats. 1974, ch. 1435, p. 3138; see generally, 2 Hanna, Cal. Law of Employee Injuries and Workers' Compensation (2d ed. 1995) § 35.03 (Rel.36-9/92).)

In 1982 the Legislature amended section 139.5 to add a provision, then denominated as subdivision (e) and today found in subdivision (f), which states: "The time within which an employee may request vocational rehabilitation benefits is set forth in Sections 5405.5, 5410 and 5803." (Stats. 1982, ch. 922, § 2, p. 3364.) Sections 5410 and 5803 were already in existence, but section 5405.5 was newly enacted in 1982 as part of the same bill which added subdivision (e) to section 139.5. As we have previously mentioned, the new section 5405.5 stated: "Except as otherwise provided in section 5410, the period within which an employee may request vocational rehabilitation benefits provided by Section 139.5 is one year from the date of the last finding of permanent disability by the appeals board, or one year from the date the appeals board approved a compromise and release of other issues."

As part of the same bill, the already existing sections 5410 and 5803 were amended to add references to vocational rehabilitation. The authors of one treatise have described the genesis of the 1982 legislation as follows:

"The Legislature was concerned that some injuries could be so severe and disabling that the applicant would be medically unable to participate in rehabilitation for five years. This issue came to the attention of the Legislature when an Assemblyman's father was in the hospital for over five years. He left the hospital and applied for the rehabilitation benefit six years after the date of injury, he found he was barred from receiving the rehabilitation benefit. In order to rectify this defect in the system, the Legislature added a provision extending the Workers' Compensation Appeals Board's jurisdiction over rehabilitation so that the issue would remain open one year from the approval of the Compromise and Release or one year from the issuance of a Findings and Award.

"Thus, the Legislature modified this principle by changing the *Labor Code* with Assembly Bill 684, which only applies to injuries on or after January 1, 1983." (Silberman & Wulz, Rehabilitation: The Cal. System (4th ed. 1988) ch. 1, p. 20.)

■ The construction of a statute and its applicability to a given situation are matters of law that are reviewable by the courts. (*Sanchez* v. *Workers' Comp. Appeals Bd.* (1990) 217 Cal.App.3d 346, 354 [266 Cal.Rptr. 21].) Final responsibility for interpreting the meaning of the workers' compensation statutes rests with the courts, not the board. (*Klee* v. *Workers' Comp. Appeals Bd.* (1989) 211 Cal.App.3d 1519, 1523 [260 Cal.Rptr. 217].) Our role is to ascertain the intent of the Legislature so as to effect the purpose of the law. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224]. "Various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." (*Klee* v. *Workers' Comp. Appeals Bd.*, *supra*, 211 Cal.App.3d at p. 1523.) " '[T]he meaning of a statute must, in the first instance, be sought in the language in which the [statute] is framed, and if that is plain . . . the sole function of the courts is to enforce it according to its terms.' " (*Leroy T.* v. *Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 434, 438 [115 Cal.Rptr. 761, 525 P.2d 665].) If construction of a statute is required, "workmen's compensation laws should be liberally construed in favor of persons injured in the course of employment." (*Leroy T.*, *supra*, at p. 438; see also § 3202.)

■ We first turn to the language of section 5405.5 itself. It states that "the period within which an employee may request vocational rehabilitation

benefits . . . is one year from the date of the last finding of permanent disability by the appeals board . . . ." In the present case it is not disputed that the employee called the claims administrator of the self-insured employer on February 22, 1994, within one year of the March 1, 1993, last finding of permanent disability, and asked that he be provided with vocational rehabilitation benefits. Is this a "request" for vocational rehabilitation benefits within the meaning of the statute? To answer that question, we must address the issue of how an employee may do what the statute says must be done within one year, namely "request vocational rehabilitation benefits."

The administrative director of the Division of Workers' Compensation is authorized to adopt rules and regulations to facilitate the providing of vocational rehabilitation benefits to injured employees. (§§ 133, 138.4, 139.5, 5307.3.) And the administrative director has done so. (See Cal. Code Regs., tit. 8, §§ 9810-9815, 10001-10021, 10122-10135.1.) Some of these rules (particularly *id.*, §§ 10122-10135.1) are applicable only to injuries occurring on or after January 1, 1990. (See 2 Hanna, Cal. Law of Employee Injuries and Workers' Compensation, *supra*, § 35.03, fn. 9.) Others are applicable to injuries occurring before January 1, 1990. In the present case we are dealing with a pre-1990 injury.

Rule 9813, subdivision (b) (Cal. Code Regs., tit. 8, § 9813, subd. (b)) states that under certain circumstances an employer's claims administrator must provide an injured employee with a notice which includes "Instructions how the employee may apply for vocational rehabilitation (e.g., by written or telephonic communication to the claims administrator, the agreed Qualified Rehabilitation Representative or the employee's representative)." It would appear, then, that one way to request rehabilitation benefits is to do exactly what respondent Hernandez did: call the employer's claims administrator and request vocational rehabilitation benefits.

Other provisions of the administrative director's rules also appear to recognize that an employee may request vocational rehabilitation benefits or services by simply asking the employer's claims administrator for those services. Subdivision (a)(2) of rule 9813 (Cal. Code Regs., tit. 8, § 9813, subd. (a)(2)), states in part: "If . . . upon receipt of a request for vocational rehabilitation services the claims administrator cannot determine the employee's entitlement to vocational rehabilitation services, a notice of delay shall be sent." Subdivision (a)(2) of the rule then goes on to say that "[t]he notice shall be sent no later than 10 days from . . . receipt of the employee's request for services." (*Ibid.*) Similarly, subdivision (a)(3) of rule 9813 provides that a claims administrator who denies a request for vocational rehabilitation benefits on the basis that the administrator has determined the

employee is not a "qualified injured worker" (*id.*, subd. (a)(3); see also rule 10003, subd. (c), Cal. Code Regs., tit. 8, § 10003, subd. (c)) must send the employee a notice which includes certain information about how to contest the administrator's determination by filing a request for dispute resolution with the rehabilitation unit. The notice must be sent to the employee "within 10 days of . . . a request for vocational rehabilitation services."

Rule 10006, subdivision (a) (Cal. Code Regs., tit. 8, § 1006, subd. (a)) provides that under certain circumstances "[t]he employer shall advise the employee of his or her potential entitlement to vocational rehabilitation services and the procedure for requesting such services." The term "employer" is defined to include "the adjusting agency of a self-insured employer." (Cal. Code Regs., tit. 8, § 10003, subd. (b).)

The rehabilitation unit is also referred to as the "bureau." (Cal. Code Regs., tit. 8, § 10003, subd. (a).) Rule 10007 (Cal. Code Regs., tit. 8, § 10007, subd. (a)) provides in part that "[t]he employer shall submit to the bureau . . . [a]ll unresolved disputes concerning entitlement to . . . vocational rehabilitation services . . . ." Similarly, rule 10014 (Cal. Code Regs., tit. 8, § 10014) provides that "[w]here there is a question concerning an employee's entitlement to vocational rehabilitation benefits, . . . either the employer or the employee may request the bureau to make a determination." The rehabilitation unit's decision may then be appealed to the board "within 20 days" after service of the rehabilitation unit's decision. (*Id.*, rule 10014, subd. (e).)

It seems clear that the rules contemplate a procedure whereby the employer will make a determination of an employee's eligibility for vocation rehabilitation benefits, either on the employer's own initiative or at the request of an employee. Only if the employee disagrees with the employer's (or employer's claims administrator's) determination that the employee is not eligible for such benefits does the rehabilitation unit or the board need to address that issue at all.[2]

Section 5405.5 does not speak in terms of requesting the rehabilitation unit to make a determination, within one year, of eligibility for rehabilitation benefits or services. Nor does the statute say that the employee must appeal

---

[2]Indeed, the "Request For Dispute Resolution" (form DWCRU-103 (12/90)) filed by respondent with the rehabilitation unit on or about March 14, 1994, contains the preprinted words "Do Not Use This Form . . . as an Initial Request for . . . Rehabilitation Services." This standard form also states "This is to be used when the parties are unable to resolve disputed rehabilitation issues and a determination by the Rehabilitation Unit is required."

an adverse decision of the rehabilitation unit within one year of a specified event. Rather, the statute requires the employee to "request vocational rehabilitation benefits" within one year from the date of the last finding of permanent disability by the appeals board or from the date the appeals board approved a compromise and release of other issues. We think the Legislature meant what it said.

Our reading of section 5405.5 appears to be further buttressed by the fact that other statutes of limitations in the workers' compensation setting speak expressly of limiting the time within which an action may be commenced when the time within which an action may be commenced is what is limited by the statute.

Section 5405 pertains to surgical, hospital and disability benefits and uses the phrase "[t]he period within which may be commenced proceedings for the collection of the benefits provided by . . . ."

Section 5406 pertains to death benefits and similarly states "the period within which may be commenced proceedings for the collection of the benefits provided by" and "[n]o such proceedings may be commenced more than one year after . . . ."

Section 5406.5 pertains to death benefits upon the death of an asbestos worker and states in part "the period within which may be commenced proceedings for the collection of the benefits provided by Article 4 . . . of Chapter 2 of Part 2 is one year from the date of death."

Section 5407 pertains to an employer's serious and willful misconduct and states "[t]he period within which may be commenced proceedings for the collection of compensation on the ground of serious and willful misconduct of the employer . . . is as follows . . . ."

Section 5407.5 pertains to a reduction in compensation due to an employee's misconduct and states "[t]he period within which may be commenced proceedings for the reduction of compensation on the ground of serious and willful misconduct of the employee . . . is as follows . . . ."

Section 5410 states in part that "[n]othing in this chapter shall bar the right of any injured employee to institute proceedings for the collection of compensation within five years after the date of injury upon the ground that . . . ."

It thus seems to us that when the Legislature enacted section 5405.5 and placed a time limit upon the time within which an employee "may request

vocational rehabilitation benefits," the Legislature was limiting the time within which an employee may request vocational rehabilitation benefits in any manner by which an employee may properly make such a request for vocational rehabilitation benefits. And one of those methods, as expressly recognized by rule 9813 (Cal. Code Regs., tit. 8, § 9813), is calling the employer's administrator and asking for vocational rehabilitation benefits. That is what respondent did here, and there is no dispute that he did so within one year of the last finding of permanent disability by the appeals board. Respondent thus complied with the time requirement of section 5405.5.

Petitioner cites cases which it says stand for the proposition that the words "request vocational rehabilitation benefits" in section 5405.5 mean a request for the rehabilitation unit or the board to determine whether the employee is or is not eligible for those benefits. Those cases do not so hold. They do not address the issue of what constitutes a "request." They merely appear to assume that once the dispute about the employee's eligibility is brought to the rehabilitation unit, the request for the rehabilitation unit to resolve the dispute is either a request for vocational rehabilitation benefits or an acknowledgment that the employee's request for benefits has preceded the employee's request for the rehabilitation unit to resolve the dispute.

There are cases, however, which appear to assume that a request to the employer (or to the employer's insurer or administrator) for vocational rehabilitation benefits constitutes a "request" within the meaning of section 5405.5. In *Boyd* v. *Workers' Compensation Appeals Bd.* (1991) 56 Cal. Comp.Cases 219, the board approved a compromise and release on January 3, 1985. More than one year later, in October of 1989, the employee made a demand on the employer's insurer to furnish vocational rehabilitation services. The board held that the employee's request for vocational rehabilitation benefits was made more than one year from the January 1985 approval of the compromise and release and thus did not satisfy section 5405.5.

In *Youngblood* v. *Workers' Comp. Appeals Bd.* (1989) 216 Cal.App.3d 764 [265 Cal.Rptr. 211], the last finding of permanent disability was made in August of 1986. The employee's request for rehabilitation benefits was made in an October 1986 letter to the employer from the applicant's counsel. The letter stated in part "[p]lease advise as to whether or not you will offer rehabilitation to [applicant] without further litigation." (216 Cal.App.3d at p. 769, fn. 4.) The employer did not offer rehabilitation benefits, and the employee "sought a decision and order from the Bureau." (216 Cal.App.3d 764.) The *Youngblood* opinion does not expressly say when the applicant filed with the bureau, but it does say that the bureau issued its decision on

July 22, 1987. Because July 1987 was within one year of the last finding of permanent disability, and because the applicant's filing with the bureau necessarily preceded the bureau's decision, the applicant's filing with the bureau must also have occurred within one year of the last finding of permanent disability. The court's opinion appears to assume, quite correctly we think, that the "request" requirement of section 5405.5 was satisfied. But it does not directly address the issue of whether the applicant's October 1986 letter was or was not a section 5405.5 "request." *Youngblood* held that section 5405.5 applies to "requests for rehabilitation benefits where entitlement to such has not been previously adjudicated." (216 Cal.App.3d at p. 772.) Because applicant Youngblood had previously requested rehabilitation benefits several years earlier, and the bureau had determined in 1982 that he was not eligible at that time (see 216 Cal.App.3d at p. 768), the court ruled that section 5405.5 did not apply to his 1986 request for vocational rehabilitation benefits.

Petitioner relies on *Sanchez* v. *Workers' Comp. Appeals Bd., supra,* 217 Cal.App.3d 346, a case which makes no mention of when the applicant actually requested rehabilitation benefits, but which points out that the applicant "filed an initial request for rehabilitation benefits with the rehabilitation bureau (Bureau)." (217 Cal.App.3d at p. 351.) This would appear to have been a request for the bureau to resolve a dispute as to whether the applicant was eligible for vocational rehabilitation benefits, as otherwise there would have been no need for the filing with the bureau. In any event, the applicant's September 25, 1984, filing with the bureau was made within one year of the appeals board's September 28, 1983, approval of a compromise and release of other issues. There had been no prior determination by the bureau of any rehabilitation issue, and thus the applicant's "request" was timely under section 5405.5. We have no quarrel with *Sanchez*'s deeming of the applicant's September 25, 1984, filing with the bureau to be a "request" for vocational rehabilitation benefits within the meaning of section 5405.5. It was. But we see nothing in section 5405.5 which would require a filing with the rehabilitation unit (or bureau), or a filing with the appeals board, in order for there to be a "request" for vocational rehabilitation benefits. *Sanchez* did not address the issue of what does or does not constitute a "request" for benefits. It just assumed, correctly we think, that an applicant's filing with the bureau a request that the bureau determine the applicant's eligibility for such benefits satisfies the section 5405.5 requirement of a "request" for those benefits.

*O'Loughlin* v. *Workers' Comp. Appeals Bd.* (1990) 222 Cal.App.3d 1518 [272 Cal.Rptr. 499], also cited by petitioner, is essentially the same as

*Sanchez* v. *Workers' Comp. Appeals Bd., supra,* 217 Cal.App.3d 346. In *O'Loughlin,* just as in *Sanchez,* the employee made his request for vocational rehabilitation benefits more than five years from the date of injury, but less than one year from the last finding of permanent disability or the approval of a compromise and release of other issues. (In *Sanchez, supra,* 217 Cal.App.3d 346 there was a compromise and release of other issues. In *O'Loughlin, supra,* 222 Cal.App.3d 1518 there was a last finding of permanent disability. Either event triggers the one-year period of section 5405.5.) In *O'Loughlin,* just as in *Sanchez,* the request was in the form of what the opinion describes as the filing by the applicant of "an initial request for vocational rehabilitation services with the Bureau . . . ." (*O'Loughlin* v. *Workers' Comp. Appeals Bd., supra,* 222 Cal.App.3d at p. 1521.) Just as in *Sanchez,* the *O'Loughlin* opinion makes no mention of whether the applicant made any other request to the employer for vocational rehabilitation benefits before filing his "request" with the bureau. Once again, we have no quarrel with *O'Loughlin.* It does not address what does or does not constitute a "request." It merely concludes, correctly we think, that a filing with the bureau falls within the meaning of the word "request" in section 5405.5.

In both *Sanchez* and *O'Loughlin,* the issue was how to harmonize section 5405.5 with the five-year time limitation of section 5410. It was not the issue presently before us, i.e., what constitutes a "request" within the meaning of section 5405.5.

In *Roberts* v. *Workers' Comp. Appeals Bd., supra,* 3 Cal.App.4th 631, the employee was injured in June of 1983. A compromise and release of other issues was approved in August of 1988, thereby starting the one-year period of section 5405.5. In May of 1989, which was more than five years from the date of injury but less than one year from the approval of the compromise and release of other issues, the employee wrote a letter to the employer and requested rehabilitation benefits and services. The employer "refused" to provide those benefits and services. (3 Cal.App.4th at p. 634.) In May of 1989, also within one year of the August 1988 approval of the compromise and release, the employee "filed a 'Request for Order of Rehabilitation Benefits' (DIA Form RB-104) and a 'Case Initiation Document' (DIA Form RB-101), thereby initiating rehabilitation proceedings before the Bureau." (*Ibid.*) The court once again applied the rule of *Sanchez* and *O'Loughlin,* and concluded that the request was timely.

The only new wrinkle in *Roberts* was that because *Sanchez* had used the phrase "initial request for rehabilitation benefits" (*Sanchez* v. *Workers' Comp. Appeals Bd., supra,* 217 Cal.App.3d at p. 354) to describe a request

for vocational rehabilitation benefits where there had been no previous adjudication of the employee's eligibility, and because the applicant in *Roberts* had checked a box on his May 1986 application for adjudication of claims (filed with the board) in which the applicant had stated that there was a "disagreement regarding liability for . . . Rehabilitation" (3 Cal.App.4th at p. 633, fn. 4), the board had determined that the applicant's 1989 request for benefits had not been an "initial" request for vocational rehabilitation benefits. The court in *Roberts* stated that what was meant by an "initial" request was a request for vocational rehabilitation benefits "where there has been no previous adjudication regarding entitlement" to those benefits. (*Roberts* v. *Workers' Comp. Appeals Bd.*, *supra*, 3 Cal.App.4th at p. 637; *Sanchez* v. *Workers' Comp. Appeals Bd.*, *supra*, 217 Cal.App.3d at p. 354.)

More importantly for our purposes, however, is the fact that in *Roberts* there is once again no issue as to what is meant by "request" in section 5405.5. The opinion merely seems to assume, correctly we think, that between the employee's letter to the employer requesting vocational rehabilitation benefits and his filing with the bureau, the "request" requirement of section 5405.5 has been satisfied. It appears to us that either one of those items would satisfy the "request" requirement of section 5405.5.

Petitioner argues that we should judicially interpret the word "request" in section 5405.5 to mean that some sort of written request is required. This, petitioner says, would prevent false contentions that an oral request was made. Neither the Legislature nor the administrative director has seen fit to impose such a requirement, however, and indeed the administrative director's rules appear to have expressly acknowledged that a telephonic request for benefits constitutes a "request." (Rule 9813, Cal. Code Regs., tit. 8, § 9813.) There is certainly no issue in the present case as to the authenticity of respondent Hernandez's telephonic request. Indeed, petitioner's claims administrator responded to it with a letter dated February 24, 1994. This was also within one year of the March 1, 1993, last finding of permanent disability. We see no good reason to judicially "interpret" section 5405.5 so as to add a requirement that does not appear in the statute, has not been deemed necessary or appropriate by either the administrative director (through rule making) or the board (through "interpretation" of the statute), and which would make the requesting of vocational rehabilitation benefits perhaps in some instances more difficult for an injured employee. And such an "interpretation" would not appear to be a liberal construction in favor of persons injured in the course of employment. (*Leroy T.* v. *Workmen's Comp. Appeals Bd.*, *supra*, 12 Cal.3d 434; § 3202.)

In sum, we view this case to be much like *Sanchez*, *O'Loughlin*, and *Roberts*. The applicant's "request" for vocational rehabilitation benefits (here, a February 22, 1993, phone call to the employer's administrator requesting such benefits) was made more than five years after the date of injury (here, September 1984), but less than one year from the last finding of permanent disability (here, March 1, 1993).[3] The applicant's request therefore satisfied section 5405.5 and was timely.

DISPOSITION

The order of the board denying petitioner's petition for reconsideration is affirmed.

Dibiaso, J., and Thaxter, J., concurred.

---

[3]In light of our conclusion that respondent's February 24, 1994, telephonic request to petitioner's claims administrator for vocational rehabilitation benefits was a timely "request" for those benefits within the meaning of section 5405.5, we need not and do not address respondent's contention that his earlier listing of "Rehabilitation" as a disputed issue in his October 1987 application for adjudication of claims constituted a timely "request" for vocational rehabilitation benefits. Compare *Vasquez* v. *Workers' Comp. Appeals Bd.* (1991) 226 Cal.App.3d 867, 872-873 [277 Cal.Rptr. 102], and *Belmontez* v. *Workers' Comp. Appeals Bd.* (1992) 7 Cal.App.4th 786, 794 [9 Cal.Rptr.2d 405], with *Roberts* v. *Workers' Comp. Appeals Bd.*, *supra*, 3 Cal.App.4th at page 639.